IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Todd Michael Taylor,<br><br>        Plaintiff,<br><br>v.<br><br>Major Neal Urch; Corporal Tahara; and Dr. Bianco, *Med Dept.*,<br><br>        Defendants. | Civil Action No.2:12-cv-1293-JMC-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983.[1] This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Bianco. (Dkt. No. 1.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about May 15, 2012. (Dkt. No. 1.) On August 27, 2012, Dr. Bianco filed a Motion for Summary Judgment. (Dkt. No. 27.)[2] By order filed August 28, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 28.) Plaintiff filed his Response in Opposition to Dr. Bianco's motion on or about September 26, 2012. (Dkt. No. 42.)

---

[1] At the time Plaintiff filed his Complaint, he was a pretrial detainee at the Spartanburg County Detention Facility. (See Dkt. No. 1.)

[2] The two other Defendants filed a Motion for Summary Judgment on December 10, 2012. (Dkt. No. 67.) Plaintiff's deadline to respond to that motion has been extended to February 18, 2013. (Dkt. No. 88.)

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at Ridgeland Correctional Institution, alleges claims pursuant to 42 U.S.C. § 1983, for events and conditions that occurred while he was a pretrial detainee at the Spartanburg County Detention Facility ("Detention Facility"). Plaintiff alleges that on May 1, 2012, he fell approximately six and a half feet "to the ground" when he "fell from a third bunk due to the fact that a railing broke off the bed." (Dkt. No. 1 at 3 of 9.) Plaintiff states that he suffered the following injuries as a result of the fall: an "egg-size knot" on the top of his head, a six-inch scrape on his left arm that required a tetanus shot, and "[e]xtreme pain" in his lower back. (Id.) Plaintiff alleges he "further injured [his] left wrist that was still healing from a previous break," such that he now has "partial loss of feeling in two of [his] fingers that was not so before [his] fall." (Id.)

Plaintiff alleges that, after his injury, he learned "that the particular bunk railing in question caused a previous fall and was reported to, and documented by, authorities to be fixed." (Id.) Plaintiff states, "If it were not for the negligence of the staff and those in charge, who failed to remedy the problem that they were fully aware existed, this unfortunate accident would not have happened." (Id.)

Plaintiff further alleges that the "medical staff . . . is partly responsible for its neglect in not informing the jail of [Plaintiff's] medical condition before even being housed in a top (3rd) bunk." (Id.) Plaintiff states that when he arrived at the Detention Facility, he "informed the jail staff while being booked" that he had been "doing heroin, morphine and alcohol everyday for several months and that [Plaintiff] was concerned about detoxing." (Id.) Plaintiff alleges that he "saw the nurse before being housed," and the nurse was informed about Plaintiff's drug use and concern about detox. (Id.) Plaintiff states,

> I also complained to the nurse of dizziness and faintness and she concluded through testing that my blood sugar was very low and told me that is probably why I felt faint and dizzy. She even had the officer get me a sandwich

2

> immediately to raise my blood sugar. Subsequently, she placed me on detox medication for the next 5 days.

(Dkt. No. 1 at 4 of 9.)

Plaintiff alleges that even though he was assigned a top bunk, he slept on the cot on the floor "because [he] was afraid of going on the 3rd bunk because [he] was weak and got dizzy at times." (Dkt. No. 1 at 4 of 9.) Plaintiff states that on May 1, 2012, Defendant Tahara came to Plaintiff's cell and told Plaintiff he had to move from the cot to the third bunk. (Id.) According to Plaintiff, he "politely" explained his "dizziness and detoxing" to Defendant Tahara, who said he would check with medical but "came and told [Plaintiff] that medical said [Plaintiff] was 'full of shit.'" (Id.)

Plaintiff alleges that, while climbing to the third bunk as ordered by Defendant Tahara, Plaintiff "reached the top and grabbed the rail to pull [himself] up and over." (Dkt. No. 1 at 5 of 9.) Plaintiff states that the "railing pulled away," and he fell to the floor, scraping his arm and hitting his head on the way down. (Id.) Plaintiff alleges that he "landed twisted" and felt a sharp pain in his lower back. (Id.) According to Plaintiff, he was mocked by officers as he lay "in serious pain on the cold concrete floor." (Id.) Plaintiff states, "Finally help arrived and I was taken to the E.R. at Spartanburg Regional by an ambulance." (Id.) Plaintiff described the medical care he received at the emergency room. (Dkt. No. 1 at 6-7 of 9.)

Plaintiff alleges that he was placed on lock-up when he was transported back to the Detention Facility. (Dkt. No. 1 at 7 of 9.) He states,

> I arrived in lock-up . . . Tuesday evening and didn't receive anything for my pain until Friday. Even then I was given ibuprofen. I never received any of the medication that the doctor prescribed me. For my entire stay in lock-up, not one nurse or officer came by to check on my condition. For 6-7 days I was being punished for threatening to pursue legal action. I laid there in pain, unable to sleep, from the pain and the anxiety from this whole ordeal.

(Id.)

3

In the "Relief" section of his Complaint, Plaintiff seeks "$125,000 for pain and suffering, negligence, harassment, mental anguish[,] and cruel and unusual punishment.' (Dkt. No. 1 at 9 of 9.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendant Dr. Bianco filed the instant Motion for Summary Judgment contending, *inter alia*, that he is entitled to summary judgment because Plaintiff "has failed to establish that Dr. Bianco was deliberately indifferent to any serious medical condition or medical need" and because Dr. Bianco is entitled to qualified immunity. (Dkt. No. 27-2 at 7.) Dr. Bianco filed an Affidavit along with his Motion for Summary Judgment; Plaintiff's medical records were attached to the affidavit as Exhibit A. (See Dkt. No. 27-1.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[3] To prevail on an Eighth Amendment deliberate indifference claim, "a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Dr. Bianco attached Plaintiff's medical records from April 27, 2012, through May 31, 2012, to his Affidavit. (See Bianco Aff. ¶ 4.) Dr. Bianco states that the following medications were prescribed for Plaintiff during the at-issue time period:

a. 4/27/12 Vistaril, 50 mg (1) TID x 5d

b. 4/27/12 Motrin, 400 mg (1) TID x 5d

c. 5/1/12 Motrin, 600 mg (1) TID x 5d

---

[3]Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

5

    d. 5/14/12 Naprosyn 500 mg (1) BID x 10d

    e. 5/31/12 Naprysyn 500 mg (1) BID x 10d

(Bianco Aff. ¶ 4.) According to Dr. Bianco, Plaintiff's medical records reveal that the following medications were given to Plaintiff during the time period from April 27, 2012, through May 24, 2012:

    a. Vistaril 50 mg

    b. Motrin 400 mg

    c. Motrin 600 mg

    d. HC 1% cream

    e. Naprosyn 500 mg

(Id.)

Defendant Bianco states that Plaintiff was examined and treated at the Spartanburg Regional Medical Center on May 1, 2012. (Id.) "Medical records are contained in the file indicating . . . [Plaintiff] received additional prescriptions for Motrin and HC 10% following the incident on May 1, 2012." (Id.) Dr. Bianco states that he personally examined Plaintiff on May 14, 2012. (Id.) Of this encounter, Dr. Bianco states,

> Mr. Taylor's complaints were evaluated with regard to his lower back pain and difficulties described in connection with his left wrist, arm and fingers in connection with his fall on May 1, 2012.
>     Appropriate physical evaluation was made and treatment was provided. Observations were made with regard to tenderness and swelling and the reflexes were evaluated in addition to grip strength. The patient was prescribed Naproysyn 500 mg and records were requested from Spartanburg Regional Medical Center . . . .
>     On May 31, 2012, an additional prescription for Naprysyn was provided to Todd M. Taylor by [me].

(Id.)

Plaintiff filed a lengthy Response in Opposition wherein he claimed, *inter alia*, that despite several requests, he has been unable to obtain his medical records. (Dkt. No. 42

6

at 2 of 22.) Plaintiff also states in his Response–which is signed by Plaintiff under the penalty of perjury–that Defendants cannot "dispute [his] claim that [he] was left in solitary confinement (lock-up) to suffer with '<u>no</u>' pain medication for at least three days upon [his] release from the Emergency Room when [he] was in the worst pain." (Dkt. No. 42 at 4 of 22.) Plaintiff states,

> I will show that my being left alone in solitary confinement with a broken bone that went untreated, in extreme pain, with no medication should be enough to establish "the deprivation of a basic human need that was objectively significantly serious" .
> . . .
> Dr. Bianco was aware of my broken wrist and the numbness in my fingers and failed to act in an appropriate and timely manner.

(<u>Id</u>. at 4-5 of 22.) Plaintiff emphatically states that he received no medication whatsoever for the first three days after being released from the emergency room, and that any indication otherwise is simply the result of "false records." (<u>Id</u>. at 5.) In addition, Plaintiff presents evidence that Motrin was ordered for him on April 27, 2012, before the fall, but that Motrin was never completed. (Dkt. No. 27-1 at 31 of 42.)

It appears that the physician at the emergency room ordered two prescription drugs for the Plaintiff: Ultram and Flexeril. (Dkt. No. 27-1 at 32 of 42.) These medications were not administered to Plaintiff, at Dr. Bianco's direction. (Dkt. No. 27-1 at 32 of 42.) The radiology records from the emergency room–which it appears that Dr. Bianco did not receive until May 14, 2012, at the earliest–indicate that while the fracture of Plaintiff's distal radius did not "appear to be acute," there was a "fracture of the ulnar styloid which could be acute." (Dkt. No. 27-1 at 35-40 of 42.) As noted above, Plaintiff filed the instant lawsuit on or about May 15, 2012, but he continued to complain of "shooting pain" in his wrist and partially numb fingers after he filed the lawsuit. (<u>See</u> Dkt. No. 1; <u>see also</u> Dkt. No. 27-1 at 41 of 42.)

Dr. Bianco moved for summary judgment contending, *inter alia*, that Plaintiff "cannot establish or create a genuine issue of material fact to the effect that Dr. Bianco exhibited

deliberate indifference to any serious medical condition." (Dkt. No. 27-2 at 5-6 of 9.) On the record before the Court, the undersigned cannot recommend granting summary judgment to Dr. Bianco.[4] "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990) (citing Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987)). "[P]rison officials may violate the Eighth Amendment's commands by failing to treat an inmate's pain." McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999); see also Boretti v. Wiscomb, 930 F.2d 1150, 1154-55 (6th Cir. 1991) (recognizing that "a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering).

Taking the evidence in the light most favorable to the Plaintiff, Plaintiff suffered a fall wherein he injured his back and his arm. He went to the emergency room, where a doctor there prescribed two medications for Plaintiff. Plaintiff was transported back to the Detention Facility, but instead of receiving the medication ordered by the emergency room physician, Plaintiff received no medication–or even any medical attention–for at least three days. Furthermore, even when Plaintiff did receive some medication, after those initial three days had passed, he did not receive it regularly and continued to suffer in pain. While the fact that a plaintiff may not agree with specific pain medication ordered would not constitute deliberate indifference, see Wright, 766 F.2d at 849, leaving an inmate with a broken bone in lock-up for three days with no pain medication and no medical treatment could support

---

[4] However, to the extent Plaintiff attempts to assert a state law claim for medical malpractice, that claim fails because Plaintiff did not file an affidavit of an expert witness as required by South Carolina Code § 15-36-100(B).

8

a claim for deliberate indifference. Harden v. Green, 27 Fed. App'x 173, 178 (4th Cir. 2001) ("Harden's sworn assertions that EMSA withheld pain medication for three days satisfied his burden as to the objective component of a deliberate indifference suit."); see also De'lonta v. Johnson, —F.3d—, 2013 WL 310350, at *5 (4th Cir. 2013 Jan. 28, 2013) ("We do, of course, acknowledge that Appellees have provided De'lonta with some measure of treatment to alleviate her GID symptoms. But just because Appellees have provided De'lonta with *some* treatment consistent with the GID Standards of Care, it does not follow that they have necessarily provided her with *constitutionally adequate* treatment.").[5]

---

[5]Dr. Bianco also moved for summary judgment on the basis of qualified immunity. The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

Given the material disputed facts, the undersigned recommends concluding that Dr. Bianco is not entitled to summary judgment. Taking the evidence in the light most favorable to the Plaintiff, Dr. Bianco knew Plaintiff was in pain and denied pain medication–and indeed all medical treatment–for a period of at least three days. The right to be free from deliberate indifference to a serious medical need in such a circumstance was clearly established, such that it would have been clear to a reasonable individual that such course of action was unconstitutional.

9

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendant Bianco's Motion for Summary Judgment (Dkt. No. 27) be DENIED.

IT IS SO RECOMMENDED.

              s/Bruce Howe Hendricks
              United States Magistrate Judge

February 1, 2013
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).