IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Todd Michael Taylor, ) | |
| ) | Civil Action No.2:12-cv-1293-JMC-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Major Neal Urch; Corporal Tahara; and ) | |
| Dr. Bianco, *Med Dept.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, Todd Michael Taylor, brought the instant action pursuant to Title 42, United States Code, Section 1983, against Defendants Urch, Tahara, and Bianco. (See Dkt. No. 1.)[1] Dr. Bianco previously filed a Motion for Summary Judgment, which was denied by the Honorable J. Michelle Childs on February 26, 2013. (See Dkt. No. 95.) The matter currently before the Court is a Motion for Summary Judgment filed by Defendants Urch and Tahara. (Dkt. No. 67.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about May 15, 2012. (Dkt. No. 1.) On December 10, 2012, Defendants Urch and Tahara filed a Motion for Summary Judgment. (Dkt. No. 67.) By order filed December 11, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 68.) Plaintiff filed his Response in Opposition on or about February 19, 2013. (Dkt. No. 94)

---

[1] At the time Plaintiff filed his Complaint, he was a pretrial detainee at the Spartanburg County Detention Facility and was proceeding *pro se*. (See Dkt. No. 1.) Plaintiff is now represented by counsel, and it appears that Plaintiff is no longer in custody.

**PROCEDURAL FACTS**

Plaintiff, who is no longer incarcerated, alleges claims pursuant to 42 U.S.C. § 1983, for events and conditions that occurred while he was a pretrial detainee at the Spartanburg County Detention Facility ("Detention Facility"). Plaintiff alleges that on May 1, 2012, he fell approximately six and a half feet "to the ground" when he "fell from a third bunk due to the fact that a railing broke off the bed." (Dkt. No. 1 at 3 of 9.) Plaintiff states that he suffered the following injuries as a result of the fall: an "egg-size knot" on the top of his head, a six-inch scrape on his left arm that required a tetanus shot, and "[e]xtreme pain" in his lower back. (Id.) Plaintiff alleges he "further injured [his] left wrist that was still healing from a previous break," such that he now has "partial loss of feeling in two of [his] fingers that was not so before [his] fall." (Id.)

Plaintiff alleges that, after his injury, he learned "that the particular bunk railing in question caused a previous fall and was reported to, and documented by, authorities to be fixed." (Id.) Plaintiff states, "If it were not for the negligence of the staff and those in charge, who failed to remedy the problem that they were fully aware existed, this unfortunate accident would not have happened." (Id.)

Plaintiff further alleges that the "medical staff . . . is partly responsible for its neglect in not informing the jail of [Plaintiff's] medical condition before even being housed in a top (3rd) bunk." (Id.) Plaintiff states that when he arrived at the Detention Facility, he "informed the jail staff while being booked" that he had been "doing heroin, morphine and alcohol everyday for several months and that [Plaintiff] was concerned about detoxing." (Id.) Plaintiff alleges that he "saw the nurse before being housed," and the nurse was informed about Plaintiff's drug use and concern about detox. (Id.) Plaintiff states,

> I also complained to the nurse of dizziness and faintness and she concluded through testing that my blood sugar was very low and told me that is probably why I felt faint and dizzy. She even had the officer get me a sandwich

> immediately to raise my blood sugar. Subsequently, she placed me on detox medication for the next 5 days.

(Dkt. No. 1 at 4 of 9.)

Plaintiff alleges that even though he was assigned a top bunk, he slept on the cot on the floor "because [he] was afraid of going on the 3rd bunk because [he] was weak and got dizzy at times." (Dkt. No. 1 at 4 of 9.) Plaintiff states that on May 1, 2012, Defendant Tahara came to Plaintiff's cell and told Plaintiff he had to move from the cot to the third bunk. (Id.) According to Plaintiff, he "politely" explained his "dizziness and detoxing" to Defendant Tahara, who said he would check with medical but "came and told [Plaintiff] that medical said [Plaintiff] was 'full of shit.'" (Id.)

Plaintiff alleges that, while climbing to the third bunk as ordered by Defendant Tahara, Plaintiff "reached the top and grabbed the rail to pull [himself] up and over." (Dkt. No. 1 at 5 of 9.) Plaintiff states that the "railing pulled away," and he fell to the floor, scraping his arm and hitting his head on the way down. (Id.) Plaintiff alleges that he "landed twisted" and felt a sharp pain in his lower back. (Id.) According to Plaintiff, he was mocked by officers as he lay "in serious pain on the cold concrete floor." (Id.) Plaintiff states, "Finally help arrived and I was taken to the E.R. at Spartanburg Regional by an ambulance." (Id.) Plaintiff described the medical care he received at the emergency room. (Dkt. No. 1 at 6-7 of 9.)

Plaintiff alleges that he was placed on lock-up when he was transported back to the Detention Facility. (Dkt. No. 1 at 7 of 9.) He states,

> I arrived in lock-up . . . Tuesday evening and didn't receive anything for my pain until Friday. Even then I was given ibuprofen. I never received any of the medication that the doctor prescribed me. For my entire stay in lock-up, not one nurse or officer came by to check on my condition. For 6-7 days I was being punished for threatening to pursue legal action. I laid there in pain, unable to sleep, from the pain and the anxiety from this whole ordeal.

(Id.)

3

In the "Relief" section of his Complaint, Plaintiff seeks "$125,000 for pain and suffering, negligence, harassment, mental anguish[,] and cruel and unusual punishment.' (Dkt. No. 1 at 9 of 9.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As noted above, the matter currently before the Court is the Motion for Summary Judgment filed by Defendants Urch and Tahara. (See Dkt. No. 67.) For the reasons set forth below, the undersigned recommends granting summary judgment to Defendants Urch and Tahara.

Plaintiff alleges he suffered injury when he "fell from a third bunk due to the fact that a railing broke off the bed." (Dkt. No. 1 at 3 of 9.) According to Plaintiff, "the particular bunk railing in question caused a previous fall and was reported to, and documented by, authorities to be fixed." (Id.) Plaintiff states, "If it were not for the negligence of the staff and

4

those in charge, who failed to remedy the problem that they were fully aware existed, this unfortunate accident would not have happened." (Id.) Plaintiff seeks to hold Defendants Urch and Tahara responsible for the injuries he sustained in the fall.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." Id. (citing Bell v. Wolfish, 441 U.S. 520, 538–40 (1979)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer, 511 U.S. at 837); see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner . . . . " Martin, 849 F.2d at 870.

5

Plaintiff's case against Defendants Tahara and Urch sounds, at best, in negligence. And it is well settled that negligence is not actionable in a § 1983 action. See Daniels v. Williams, 474 U.S. 327, 328 (1986); Whitley v. Albers, 475 U.S. 312, 319 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct. . . . "). This case is analogous to Arnold v. South Carolina Department of Corrections, 843 F. Supp. 110 (D.S.C. 1994). In Arnold, Judge Norton examined an inmate's Eighth Amendment claim for injuries the inmate sustained when a malfunctioning 25-gallon steam pot fell, causing hot water from the pot to severely burn and scald the inmate. See Arnold, 843 F. Supp. 110. Although the Magistrate Judge in that case recommended denying the defendants' motion for summary judgment, concluding that the plaintiff alleged more than "mere negligence," Judge Norton disagreed. Arnold, 843 F. Supp. at 111-12. In rejecting the plaintiff's claim, Judge Norton stated,

> Though the intentional placing of prisoners in dangerous surroundings can violate the Eighth Amendment, several courts considering the existence of malfunctioning prison equipment have held that such conditions, even where prison officials are alleged to have known of them, do not rise to the level of a constitutional violation.
> . . . .
> In the case at hand, Arnold asserts that his kitchen supervisors knew of the faulty condition of the steam pot. He states that he and other workers told Defendants "that the pot was inoperable because of the gears and that they needed fixing." (Pl.Aff. at 2.) Arnold's fellow inmates state in their affidavits that it was common knowledge among the workers in the kitchen that the pot was broken, such that "the supervisors should have known." (Aff. of Ferguson at 1.) The inmates also state that workers had placed a can under the steam pot to prevent it from overturning, which it would do with the slightest application of force. Inmate Willard states that when he questioned Defendant Harmon about the mechanical problem with the pot, Harmon stated "they did not have time to fix the steam pot because they had over a thousand ... inmates to feed." (Aff. of Willard at 1).
> Despite all of these statements and Arnold's use of the phrase "deliberate indifference" in his pleadings, Arnold has not offered evidence that his supervisors acted with the requisite "culpable state of mind" in failing to repair the piece of equipment. At best, Arnold has offered evidence sufficient to go forward on a claim of negligence. To convert conduct that does not even

6

> purport to be punishment into "cruel and unusual punishment," defendants must demonstrate more than ordinary lack of due care for the prisoner's interests or safety. Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Considering these standards, Arnold has failed in his attempt to satisfy the subjective "culpable state of mind" component of an Eighth Amendment violation as stated by the Supreme Court. Wilson at ——, 111 S.Ct. at 2324.

Arnold, 843 F. Supp. at 112-13. Furthermore, claims similar to Plaintiff's claims were rejected in Tumele v. Robert Scott Correctional Facility, No. 06-CV-10605-DT, 2009 WL 973344 (E.D. Mich. Apr. 13, 2009).

As a preliminary matter, there is no evidence that either Defendant Urch or Defendant Tahara had any knowledge that the bed rail in question was broken. It is worth noting that Plaintiff himself alleged in his Complaint that, on May 1, 2012, he "fell from a third bunk due to the fact that a railing *broke* off the bed." (Dkt. No. 1 at 3 of 9 (emphasis added).) The statements of Michael Thomas Monroe and Brandon Ray Rochester–even if considered–do not contain evidence that Defendant Urch or Defendant Tahara personally had knowledge of any problem with the bed rail in question. (See Dkt. No. 94-1 at 51-54 of 54.)[2] Monroe states that he reported a problem to Officer McCain, Officer Padgett, and Officer Bear. (Dkt. No. 94-1 at 51 of 54.) The fact that Rochester and Monroe complained about the bed rail to "several officers" simply does not show that Defendants Tahara or Urch had knowledge of and disregarded an excessive risk to inmate health and safety. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (in a § 1983 action, "liability is personal,

---

[2]These statements were not proper affidavits under Rule 56 of the Federal Rules of Civil Procedure because the statements were not sworn under oath or made under penalty of perjury. See 28 U.S.C. § 1746 (noting that unsworn declarations can satisfy affidavit requirement only if signed under penalty of perjury); see also Williams v. Sielaff, 914 F.2d 250, *1 (4th Cir.1990) (unpublished table decision) (noting that statement made under penalty of perjury and declared to be true and correct to the best of declarant's knowledge qualifies as affidavit); Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300 (5th Cir.1988) ("[A]n unsworn affidavit is incompetent to raise a fact issue precluding summary judgment. A statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for an affiant's oath if the statement contained therein is made 'under penalty of perjury' and verified as 'true and correct.' ").

7

based upon each defendant's own constitutional violations").[3] However, as set forth above in Anderson and Tumele, even if Defendants Urch and Tahara had known of some problem with the bed railing, Plaintiff's claim against them fits squarely within the boundaries of general negligence. The undersigned therefore recommends granting summary judgment to Defendants Urch and Tahara on Plaintiff's claims related to the faulty bed rail.

Plaintiff's claim against Urch and Tahara for Plaintiff's placement on the top bunk when he was allegedly detoxing also fails. There is no evidence that Urch was involved in the decision to place Plaintiff on the top bunk. And the allegations against Tahara with respect to this claim simply do not rise to the level of a constitutional violation. Plaintiff alleged that he was assigned a top bunk but slept on the cot "because [he] was afraid of going on the 3rd bunk because [he] was weak and got dizzy at times." (Dkt. No. 1 at 4 of 9.) Plaintiff alleged that on May 1, 2012, Defendant Tahara came to Plaintiff's cell and told Plaintiff he had to move from the cot to the third bunk. (Id.) According to Plaintiff, he "politely" explained his "dizziness and detoxing" to Defendant Tahara, who said he would check with medical but "came and told [Plaintiff] that medical said [Plaintiff] was 'full of shit.'" (Id.) Plaintiff fell when the railing gave way as he was climbing to the top bunk. Nothing about that set of facts reveals any deliberate indifference on the part of Defendant Tahara. Plaintiff voiced a concern about sleeping on the top bunk, and Tahara checked with medical and concluded that there was no medical order indicating Plaintiff could not sleep on the top bunk. (See also Dkt. No. 94 at 4-5 of 29.) Defendants are entitled to summary judgment on this claim.

---

[3]To the extent Plaintiff attempts to hold Urch liable because Urch was the director of the Detention Facility, such an attempt fails because the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-99 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory").

Finally, Defendants Urch and Tahara are entitled to summary judgment on Plaintiff's medical claims. When Plaintiff fell, Plaintiff received medical treatment and was ultimately sent to the emergency room. Defendants Urch and Tahara are not medical personnel, and there is no evidence that these Defendants interfered with Plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848b 854 (4th Cir.1990).[4] Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

Plaintiff states in his Response in Opposition,

Though jail staff may feel that they are not liable for being non-medical staff, they pass out prescription medications illegally so if I am not receiving my medications, it can be directly attributed to their actions and/or inactions.

(Dkt. No. 94 at 6 of 29.) The problem with Plaintiff's assertion is that it Plaintiff was under the care of Dr. Bianco, and there is no evidence that either Defendant Urch or Defendant Tahara personally interfered with Dr. Bianco's treatment.[5] Under the principles set forth above, Plaintiff's § 1983 claim regarding his medical treatment against these non-medical Defendants fails. Defendants Urch and Tahara are therefore entitled to summary judgment.

---

[4] Miltier has been overruled by Farmer to the extent that it allowed a finding of deliberate indifference upon constructive knowledge. See Farmer, 511 U.S. 825.

[5] It is worth noting, for example, that the emergency room physician ordered two prescription drugs for the Plaintiff (Ultram and Flexeril), but these medications were not administered to Plaintiff at the direction of Dr. Bianco. (Dkt. No. 27-1 at 32 of 42.)

9

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Motion for Summary Judgment filed by Defendants Urch and Tahara (Dkt. No. 67) be GRANTED.

IT IS SO RECOMMENDED.

                                                 s/Bruce Howe Hendricks
                                                 United States Magistrate Judge

July 8, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).